THE BELLEVUE GAS AND OIL COMPANY v. S. W. PENNEL.

No. 15,216.   (92 Pac. 1101.)

SYLLABUS BY THE COURT.

MINES AND MINERALS—*Gas Lease—Construction.* An ordinary gas lease contained a clause which reads: "To pipe gas to the house for domestic purposes as soon as well is completed." *Held,* that by this provision the parties intended that the gas furnished thereunder should be supplied without charge.

Error from Chautauqua district court; GRANVILLE P. AIKMAN, judge. Opinion filed December 7, 1907. Affirmed.

STATEMENT.

ON August 13, 1903, S. W. Pennel executed and delivered a gas lease to S. Breckenridge, which was subsequently assigned to, and is now the property of, the Bellevue Gas and Oil Company. It reads:

"LEASE FOR OIL AND GAS.

"This agreement, made this 13th day of August, 1903, by and between S. W. Pennel, of Chautauqua county, Kansas, of the first part, and S. Breckenridge,

50—76 KAN.

of Santa Paula, of Ventura county, state of California, of the second part,

"Witnesseth: That for and in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, and of the rents and royalties hereinafter specified, the party of the first part has and does grant and lease to the party of the second part the exclusive right of searching for and producing petroleum and natural gas, with the rights necessary to do these things, and the right to assign, sublet and subdivide a certain tract or parcel of land situate in Belleville township, Chautauqua county, state of Kansas, bounded and described as follows:

"On the north by section-line between 8 and 17; on the east by lands of Mayfield and Lynn; on the south by lands of Mayfield place; on the west by lands of Huff; also 20 acres; s ½ s. w. s. e. sec. 8, twp. 35, r. 12.

"To have and to hold the said premises for the term of two years from this date and so much longer as oil and gas can be produced in paying quantities or royalty is paid.

"The second party agrees:

"(1)	To deliver to the first party in tanks or pipe-lines the one-sixth part of all oil produced and saved on these premises.

"(2)	If gas is found in paying quantities and utilized away from this farm to pay to party of the first part one hundred dollars per annum for the gas from each well so used.

"(3)	To conduct operations so as to least interfere with farming privileges.

"(4)	To drill no well within 600 ft. of the buildings on these premises except by consent of the first party.

"(5)	To complete one well every sixty days thereafter until ten wells are completed on said lands, provided oil is found in paying quantities in each well so drilled.

"(6)	To pipe gas to the house for domestic purposes as soon as well is completed.

"This block, of which this is a part, being the block of 266 acres in Belleville township, Chautauqua county, state of Kansas, on the waters of Hickory creek.

"Second party shall have use of sufficient oil, water and gas free to run all necessary machinery for operating said lease and the right to lay pipe-lines for water and gas on and across said premises; also the right to

remove any machinery or fixtures placed on the premises by ————, and may at any time surrender this lease and be released from all liabilities thereunder upon payment of ten dollars.

"All conditions and covenants herein shall extend to the heirs, successors or assigns of the parties thereto. All erasures and interlineations made before signing.

"In witness whereof, we the said parties of the first and second parts have hereunto set our hands the day and year first above written."

Afterward a gas-well was completed within the time limited by the lease, and gas was piped therefrom to the home of the lessor, who used gas therefrom for domestic purposes prior to, and since, August 13, 1904. On August 13, 1904, the Bellevue Gas and Oil Company paid in cash the $100 stipulated in the lease as the annual rent for a gas-well. On August 13, 1905, it presented to Pennel, as payment of the rent for the year that had just expired, an account for gas used by him, amounting to $97, together with $3 cash, which was refused, and this action was commenced to recover the rent. The case was submitted to the court upon an agreed statement of facts, which, so far as material, reads:

"It is admitted that the well was drilled within the time prescribed in the lease, and that on the 13th day of August, 1905, one hundred dollars was due to the plaintiff for rental for the gas-well. . . . It is also admitted that on the 13th day of August, 1905, defendant presented to the plaintiff the itemized statement, a copy of which is attached to its answer, and three dollars in cash which defendant offered in payment for said one hundred dollars, which was refused by the plaintiff.

"It is also admitted that on August 12, 1904, defendant through its agent, J. B. Swan, paid one hundred dollars as rental on said gas-well to the plaintiff and that plaintiff would testify that at the time said payment was made he, the plaintiff, handed said Swan the copy of said oil-and-gas lease, which Swan read before making said payment, and if Swan was present he would testify that he made said payment, without

knowledge of the terms and conditions of this lease, and gave a check, because he feared that unless he did so the lease would expire the next day.

"The defendant presented no bill to the plaintiff for the gas used during the years of 1903 and 1904."

The plaintiff recovered, and the defendant brings the case here for review.

*Joseph P. Rossiter,* for plaintiff in error.

*J. R. Charlton,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The only controversy between the parties arises upon the proper interpretation to be given to subdivision six of the lease, which reads: "To pipe gas to the house for domestic purposes as soon as well is completed."

The plaintiff insists that under this clause gas is to be delivered at his home free, and therefore the account presented by the gas company does not constitute any claim against him. On the other hand, the gas company claims that the word "free" is not used in this clause, and should not be arbitrarily read into it. The trial court decided that, taking the whole instrument, the situation of the parties and the subject-matter of the contract together, it was apparent that the parties intended that gas should be furnished without charge.

It will be observed that this is one of the agreements on the part of the lessee which constitutes the consideration for the lease. This clause expressly limits the amount to be furnished to "domestic purposes." Why this limitation if all the gas furnished was to be paid for at its market value? No price is named in this clause or anywhere in the lease for the gas furnished. This omission seems at least unusual, if it was intended that the gas should be paid for. The omission of the gas company to collect or demand payment for gas

Rudolph v. Commission Co.

used prior to August, 1904, is also unusual, if payment therefor was expected.

We are unable to say that the district court erred in its interpretation of this clause.

The judgment is affirmed.